1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

6
7
8

LEXINGTON INSURANCE COMPANY;
HOMELAND INSURANCE COMPANY OF
NEW YORK; HALLMARK SPECIALTY
INSURANCE COMPANY; ASPEN
SPECIALTY INSURANCE COMPANY;
ASPEN INSURANCE UK LTD.; CERTAIN
UNDERWRITERS AT LLOYD'S, LONDON
AND LONDON MARKET COMPANIES
SUBSCRIBING TO POLICY NO. PJ193647;
CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON SUBSCRIBING TO POLICY NO.
PJ1900131; CERTAIN UNDERWRITERS AT
LLOYD'S, LONDON AND LONDON
MARKET SUBSCRIBING TO
POLICY NO. PJ1933021; CERTAIN
UNDERWRITERS AT LLOYD'S, LONDON
SUBSCRIBING TO POLICY NOS. PD-
10367-05 AND PD-11091-00; AND
ENDURANCE WORLDWIDE INSURANCE
LIMITED (T/AS SOMPO
INTERNATIONAL) SUBSCRIBING TO
POLICY NO. PJ1900134-A,

　　　　　　　Plaintiffs,

　　v.

ANITA NEAL, in her official capacity as
Judge for the Port Gamble S'Klallam
Community Court, ERIC NIELSEN, in his
official capacity as Chief Judge of the Port
Gamble S'Klallam Court of Appeals, JERRY
FORD, in his official capacity as Judge of the
Port Gamble S'Klallam Court of Appeals, and
MARY CARDOZA, in her official capacity as
Judge of the Port Gamble S'Klallam Court of
Appeals,

　　　　　　　Defendants.

No. 3:21-cv-5929

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

JURY DEMAND

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I. INTRODUCTION

1.      Indian tribes exist in the United States as "distinct, independent political communities" with necessarily *limited* sovereign powers.  *Plains Commerce Bank v. Long Family and Cattle Co.*, 554 U.S. 316, 327 (2008).  The sovereignty they wield centers only "on the land held by the tribe and on tribal members" and does not, as a general matter, extend to "non-Indians who come within their borders."  *Id.*  If a tribe imposes its authority on nonmembers beyond the limits of tribal jurisdiction, particularly over nonmembers who have not entered tribal land or done anything to affect tribal self-government or internal relations, federal courts are empowered to declare the tribe's exercise of jurisdiction unlawful and enjoin it.

2.      Plaintiffs in this action (collectively, the "Insurers") urgently request such declaratory and injunctive relief against the judicial officials of the Port Gamble S'Klallam Tribe (the "Tribe"), who continue to subject the Insurers to the unlawful jurisdiction of the Tribe and its tribal court, the Port Gamble S'Klallam Community Court (the "Tribal Court").  Without this Court's intervention, the Insurers are and imminently will be subject to the orders and judgments of a court that lacks authority over them.[1]

3.      This case arises from an insurance dispute.  The Tribe and its corporate arm, the Noo-Kayet Development Corporation ("Noo-Kayet"), own and operate various businesses on the Kitsap Peninsula in Washington, including a casino.  In March 2020, like countless other businesses and business owners across the country, the Tribe and Noo-Kayet suspended non-essential operations to slow the spread of COVID-19 throughout their community.  The resulting pause in commercial activity resulted in alleged financial losses to the Tribe and Noo-Kayet, and they in turn sought "business interruption" coverage under their property insurance policies.

---

[1]  Plaintiffs in this action are:  Lexington Insurance Company; Homeland Insurance Company of New York; Hallmark Specialty Insurance Company; Aspen Specialty Insurance Company; Aspen Insurance UK Ltd.; Certain Underwriters at Lloyd's, London and London market companies subscribing to Policy No. PJ193647; Certain Underwriters at Lloyd's, London subscribing to Policy No. PJ1900131; Certain Underwriters at Lloyd's, London and London market companies subscribing to Policy No. PJ1933021; Certain Underwriters at Lloyd's, London subscribing to Policy Nos. PD-10367-05 and PD-11091-00; and Endurance Worldwide Insurance Limited (t/as Sompo International) subscribing to Policy No. PJ1900134-A.

Lexington, as the primary insurer for both the Tribe and Noo-Kayet, began investigating their claims, but while that investigation was pending, the Tribe and Noo-Kayet filed a lawsuit against the Insurers, for declaratory judgment and breach of contract.

4.      Hundreds of similar COVID-19-related lawsuits have been filed by policyholders throughout the country, and insurers have prevailed in the overwhelming majority of those cases, including the only cases decided so far by state and federal appellate courts.  *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885 (9th Cir. 2021); *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, __ F.4th __, 2021 WL 5833525 (7th Cir. 2021); *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398 (6th Cir. 2021); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141 (8th Cir. 2021); *Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*, __ F. App'x __, 2021 WL 3870697 (11th Cir. 2021) (per curiam); *Inns by the Sea v. Cal. Mut. Ins. Co.*, 71 Cal. App. 5th 688 (2021); *Sanzo Enters., LLC v. Erie Ins. Exch.*, 2021 WL 5816448 (Ohio Ct. App. 2021).  In each of those cases, the court explained that there can be no coverage under a property insurance policy unless property is damaged or lost.  Mere loss of use of property is not enough to trigger coverage.  *See, e.g.*, *Mudpie*, 15 F.4th at 892 (rejecting argument that a property insurance policy's requirement of "direct physical loss of or damage to" property is synonymous with "loss of use," because "intangible," "incorporeal," or "economic" losses are distinguishable from "physical" ones).  These rulings are consistent with Washington law.  *See, e.g.*, *Seattle Tunnel Partners v. Great Lakes Reins. (UK) PLC*, 18 Wash. App. 2d 600, 621 (2021) ("Washington case law shows that if a policy provides coverage for 'physical' loss, it does not provide coverage for loss of use unless that loss of use arises out of or as a result of the physical loss.").

5.      The questions of insurance law presented by the Tribe and Noo-Kayet's suit against their insurers are no different from those presented by the hundreds upon hundreds of cases in state and federal courts in which insurers have prevailed.  (Insurers have won dismissal or summary judgment in at least 665 cases—over 90% of those filed.  *See* University of Pennsylvania Law School, Covid Coverage Litigation Tracker, Trial Court Rulings on the Merits in Business Interruption Cases, https://cclt.law.upenn.edu/judicial-rulings/ (last visited Dec. 21, 2021).)  This case is different from those cases only because of where it was brought:  Tribal Court.

COMPLAINT
No. __
Page 3

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
(213) 229-7000

6. The Tribe and Noo-Kayet filed their suit in their Tribal Court in an effort to find a friendlier forum for their claims—which would likely be dismissed if filed in state or federal court.

7. As a general rule, tribes *presumptively* lack adjudicatory authority over nonmembers like the Insurers. Only in exceptional circumstances may a tribe exercise jurisdiction over a nonmember through its tribal court. The Supreme Court recognizes two exceptions, under *Montana v. United States*, 450 U.S. 544 (1981), and the Ninth Circuit recognizes a third, under the right-to-exclude doctrine.

8. The *Montana* exceptions authorize the exercise of tribal jurisdiction by a tribal court when (1) the nonmember's conduct arises from a consensual relationship with the tribe or its members, or (2) the nonmember's conduct imperils the tribe's health, welfare, or political or economic wellbeing. *Montana*, 450 U.S. at 565–66. In either case, however, the exercise of tribal jurisdiction must be based on the nonmember's conduct "on the land," within the territorial boundaries of the tribe, and it must be necessary to protect tribal self-government and control internal relations. *Plains Commerce Bank*, 554 U.S. at 334, 336–37.

9. Under the right-to-exclude doctrine, a tribe's sovereign power to exclude nonmembers from its land grants it "the lesser authority to set conditions on their entry through regulations." *Water Wheel Camp Rec. Area, Inc. v. LaRance*, 642 F.3d 802, 804–05 (9th Cir. 2011) (per curiam). But such an exclusionary power cannot apply where nonmembers have not physically entered or engaged in activity on tribal land. *Emp'rs Mut. Cas. Co. v. McPaul*, 804 F. App'x 756, 757 (9th Cir. 2020).

10. These exceptional circumstances do not exist here. Although the Insurers contracted with the Tribe and Noo-Kayet to insure their property, contractual relationships alone are not enough to establish tribal jurisdiction. The Insurers' contract-based activities—reviewing and determining coverage under the policies issued to the Tribe and Noo-Kayet—have not occurred *on the land* held by the Tribe, as none of the Insurers has ever entered the Tribe's borders.

11. Instead, the Insurers' relevant conduct occurred outside the Tribe's borders in their respective off-reservation places of business. The insurance policies themselves were issued as part of a nationwide property insurance program administered and maintained by a third party,

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
(213) 229-7000

Alliant Insurance Services, Inc.  The Tribe and Noo-Kayet participate in this program and procured insurance through Alliant, not directly from the Insurers.  And the Insurers, along with other carriers, participate in this program through contracts with Alliant and/or wholesale brokers to provide insurance and underwriting services to any members of the program who meet set underwriting standards.  In this case, there was no direct contact between the Insurers and the insureds (the Tribe and Noo-Kayet) when the insurance policies were negotiated and issued.

12.     The Tribe need not adjudicate disputes arising from the insurance policies to protect its self-government or control its internal relations.  Because the Insurers are nonmembers whose relevant conduct occurred far from the reservation, regulating their conduct cannot be justified by reference to tribal governance or internal tribal affairs.  The Tribe, through its extensive tribal law and order code, regulates many types of reservation activities, such as hunting, fishing, gaming, wood harvesting, motor vehicle traffic and safety, fireworks, domestic violence, torts, utility services, labor organization and collective bargaining, and commercial activity concerning liquor, cigarettes, and marijuana, among others.  But insurance is not one of them, undermining any suggestion that the Tribe's exercise of authority over the Insurers is necessary to protect the Tribe's sovereign interests.

13.     In short, the Tribe has imposed its adjudicatory authority on the Insurers based on the mistaken notion that it has jurisdiction over any nonmember it does business with.  But such a view is not only contrary to law, it swallows the general rule against tribal jurisdiction over nonmembers and expands the Tribe's otherwise limited sovereign powers.

14.     The Insurers have been subjected to the Tribal Court's jurisdiction for nearly a year and a half.  During this time, the Insurers have vigorously contested the Tribal Court's jurisdiction before the Tribal Court itself, as well as its Court of Appeals, to no avail:  The Tribal Court continues to impose its jurisdiction on the Insurers.  The Insurers were required to engage in these tribal court proceedings under a federally imposed exhaustion requirement, to provide the Tribe and the Tribal Court with the opportunity to consider its own jurisdiction before any federal challenge could be brought.  But tribal remedies have now been fully exhausted, and this case is ripe for federal review and intervention.

COMPLAINT
No. __
Page 5

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
(213) 229-7000

15.     Because the tribal court, through Defendants, continues to exercise jurisdiction over the Insurers in violation of federal law and imminently will issue orders and judgments as to the Insurers without lawful authority, the Insurers have suffered injury in fact, traceable to Defendants, that can be redressed by this Court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992); *Plains Commerce Bank*, 554 U.S. at 326.

16.     For these and other reasons alleged herein, the Insurers respectfully request that this Court declare the Port Gamble S'Klallam Tribe's exercise of jurisdiction over them unlawful and enjoin Defendants, each of whom is a judicial official of the Tribe, from further proceedings involving the Insurers before the Port Gamble S'Klallam Community Court.

## II.  PARTIES

17.     Plaintiff Lexington Insurance Company (referred to previously and throughout as "Lexington") is a Delaware corporation with its principal place of business in Boston, Massachusetts.

      a.  Lexington is not a member of the Tribe and does not maintain any operations, offices, employees, or agents within the Port Gamble S'Klallam Tribal Reservation (the "Reservation").

      b.  Lexington and other Insurers were sued by the Tribe and Noo-Kayet in the Port Gamble S'Klallam Community Court (referred to previously and throughout as the "Tribal Court"), in *Port Gamble S'Klallam Tribe v. Lexington Insurance Company*, No. POR-C1-2020-0014-G (the "Tribal Court Action").

      c.  Lexington and the other Insurers moved by limited special appearance to dismiss the Tribal Court Action for lack of jurisdiction. Following the Tribal Court's denial of the motions, Lexington and the other Insurers appealed the decision to the Port Gamble S'Klallam Court of Appeals (the "Tribal Court of Appeals"), in *Port Gamble S'Klallam Tribe v. Lexington Insurance Company*, No. POR-AP-2021-0001 (the "Tribal Court Appeal").

18.     Plaintiff Homeland Insurance Company of New York ("Homeland") is a New York corporation with its principal place of business in Minnesota.

    a.   Homeland is not a member of the Tribe and does not maintain any operations, offices, employees, or agents within the Reservation.

    b.   Homeland and other Insurers were sued by the Tribe and Noo-Kayet in the Tribal Court Action.

    c.   Homeland and the other Insurers moved by limited special appearance to dismiss the Tribal Court Action for lack of jurisdiction.  Following the Tribal Court's denial of the motions, Homeland and the other Insurers appealed from the decision to the Tribal Court of Appeals.

19.    Plaintiff Hallmark Specialty Insurance Company ("Hallmark") is a Texas corporation with its principal place of business in Texas.

    a.   Hallmark is not a member of the Tribe and does not maintain any operations, offices, employees, or agents within the Reservation.

    b.   Hallmark and other Insurers were sued by the Tribe and Noo-Kayet in the Tribal Court Action.

    c.   Hallmark and the other Insurers moved by limited to dismiss the Tribal Court Action for lack of jurisdiction.

    d.   Hallmark, Aspen Specialty Insurance Company, and Aspen Insurance UK, Ltd, also brought separate motions to dismiss based on failure to state a claim/ripeness and based upon lack of due process.

    e.   Following the Tribal Court's denial of the motions, Hallmark and the other Insurers appealed from the decision to the Tribal Court of Appeals.

20.    Plaintiff Aspen Specialty Insurance Company ("Aspen Specialty") is a North Dakota surplus lines insurance company with its principal place of business in New Jersey.

    a.   Aspen Specialty is not a member of the Tribe and does not maintain any operations, offices, employees, or agents within the Reservation.

    b.   Aspen Specialty and other Insurers were sued by the Tribe and Noo-Kayet in the Tribal Court Action.

COMPLAINT
No. __
Page 7

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
(213) 229-7000

   c.   Aspen Specialty and the other Insurers moved by limited to dismiss the Tribal Court Action for lack of jurisdiction.

   d.   Aspen Specialty, Hallmark, and Aspen Insurance UK, Ltd., also brought separate motions to dismiss based on failure to state a claim/ripeness and based upon lack of due process.

   e.   Following the Tribal Court's denial of the motions, Aspen Specialty and the other Insurers appealed from the decision to the Tribal Court of Appeals.

21.   Plaintiff Aspen Insurance UK, Ltd. ("Aspen Insurance UK"), is a United Kingdom domiciled insurer with its principal place of business in London, England.

   a.   Aspen Insurance UK is not a member of the Tribe and does not maintain any operations, offices, employees, or agents within the Reservation.

   b.   Aspen Insurance UK, and other Insurers were sued by the Tribe and Noo-Kayet in the Tribal Court Action.

   c.   Aspen Insurance and the other Insurers moved by limited to dismiss the Tribal Court Action for lack of jurisdiction.

   d.   Aspen Insurance UK, Aspen Specialty, and Hallmark, also brought separate motions to dismiss based on failure to state a claim/ripeness and based upon lack of due process.

   e.   Following the Tribal Court's denial of the motions, Aspen Insurance UK and the other Insurers appealed from the decision to the Tribal Court of Appeals.

22.   Plaintiffs Certain Underwriters at Lloyd's, London and London market companies subscribing to Policy No. PJ193647 are all organized and registered under the laws of the United Kingdom.  Plaintiffs Certain Underwriters at Lloyd's, London subscribing to Policy No. PJ1900131 are organized and registered under the laws of the United Kingdom.  Plaintiffs Certain Underwriters at Lloyd's, London and London market companies subscribing to Policy No. PJ1933021 are organized and registered under the laws of the United Kingdom.  Plaintiffs Certain Underwriters at Lloyd's, London subscribing to Policy Nos. PD-10367-05 and PD-11091-00 are organized and registered under the laws of the United Kingdom.  Plaintiff Endurance

COMPLAINT
No. __
Page 8

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
(213) 229-7000

Worldwide Insurance Limited (t/as Sompo International) subscribing to Policy No. PJ1900134-A is organized and registered under the laws of the United Kingdom. The entities identified in this paragraph (referred to collectively as the "London-based Carriers") have their principal places of business in the United Kingdom.

    a.   The London-based Carriers are not members of the Tribe and do not maintain any operations, offices, employees, or agents within the Reservation.

    b.   The London-based Carriers and the other Insurers were sued by the Tribe and Noo-Kayet in the Tribal Court Action.

    c.   The London-based Carriers and the other Insurers moved by limited special appearance to dismiss the Tribal Court Action for lack of jurisdiction. Following the Tribal Court's denial of the motions, the London-based Carriers and the other Insurers appealed from the decision to the Tribal Court of Appeals.

23.  Defendant Anita Neal is a Judge for the Tribal Court and currently presides over the Tribal Court Action. She is sued only in her official capacity. Upon information and belief, Defendant Neal has authority to terminate the Tribal Court Action against the Insurers. Upon information and belief, Defendant Neal is a resident of the State of Washington.

24.  Defendant Eric Nielsen is the Chief Judge of the Tribal Court of Appeals and presided over the Tribal Court Appeal. He is sued only in his official capacity. Upon information and belief, Defendant Nielsen has authority to terminate the Tribal Court Action against the Insurers. Upon information and belief, Defendant Nielsen is a resident of the State of Washington.

25.  Defendant Jerry Ford is a Judge of the Tribal Court of Appeals and presided over the Tribal Court Appeal. He is sued only in his official capacity. Upon information and belief, Defendant Ford has authority to terminate the Tribal Court Action against the Insurers. Upon information and belief, Defendant Ford is a resident of the State of Washington.

26.  Defendant Mary Cardoza is a Judge of the Tribal Court of Appeals and presided over the Tribal Court Appeal. She is sued only in her official capacity. Upon information and

1    belief, Defendant Cardoza has authority to terminate the Tribal Court Action against the Insurers.

2    Upon information and belief, Defendant Cardoza is a resident of the State of Washington.

3    **III.  JURISDICTION, VENUE, AND EXHAUSTION OF TRIBAL REMEDIES**

4    **A.    Jurisdiction**

5         27.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C.

6    § 1331.  Whether the Tribal Court may exercise jurisdiction over the nonmember Insurers is an

7    issue arising under federal law and thus presents a federal question.  *Plains Commerce Bank*, 554

8    U.S. at 324.

9         28.    The Insurers have standing to bring this action.  The Insurers have suffered "injury

10   in fact" because they have been and continue to be subjected to the Tribal Court's unlawful

11   determination and exercise of jurisdiction over them, and because they have been and imminently

12   will be subject to the Tribal Court's orders and judgments, injuries which are traceable to

13   Defendants and can be redressed by a favorable decision of this Court.  *See Lujan*, 504 U.S. at

14   561–62 (holding that if a plaintiff "is himself an object of" a government's unlawful regulation,

15   there is "little question that the action . . . has caused him injury, and that a judgment preventing

16   . . . the action will redress it"); *Plains Commerce Bank*, 554 U.S. at 326 (holding that a nonmember

17   "was injured by the Tribal Court's exercise of jurisdiction over [a] claim" against it and that

18   "[t]hose injuries can be remedied by a ruling in favor of the [nonmember] that the Tribal Court

19   lacked jurisdiction and that its judgment on the . . . claim is null and void").

20        29.    The Insurers seek declaratory and injunctive relief under the doctrine established in

21   *Ex Parte Young*, 209 U.S. 123 (1908), which authorizes such suits against state or tribal officials.

22   Under *Ex Parte Young* and its progeny, this Court has authority to enjoin tribal officials from

23   violating federal law.  *See Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 796 (2014).

24   Defendants are judges of the Tribal Court or Tribal Court of Appeals and so are officials of the

25   Tribe.  Each Defendant is involved in the Tribal Court's ongoing exercise of jurisdiction over the

26   Insurers in violation of federal law.

27        30.    The Insurers also seek declaratory and injunctive relief pursuant to Rules 57 and 65

28   of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, which grant this Court

authority to declare the rights and legal relations surrounding questions of actual controversy that exist between parties. A case of actual controversy exists between the Insurers and Defendants with respect to the Tribal Court's ongoing exercise of jurisdiction over the Insurers in violation of federal law.

**B.      Venue**

31.      Venue is proper within the United States District Court for the Western District of Washington pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this judicial district and, upon information and belief, all Defendants are residents of the State of Washington.

**C.      Exhaustion of Tribal Remedies**

32.      Challenges to a tribal court's jurisdiction are subject to an exhaustion requirement. Before a federal court may consider the question "whether a tribal court has exceeded the lawful limits of its jurisdiction," the tribal court itself must first be given a "full opportunity" to evaluate and determine its own jurisdiction. *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856–57 (1985). Once "tribal remedies" have been exhausted, a tribal court's determination of its own jurisdiction is subject to review by a federal court. *Id.* at 853.

33.      To exhaust tribal remedies, "tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts." *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 17 (1987). Thus, exhaustion is complete when tribal appellate review is complete. *Id.*; *see also Elliott v. White Mountain Apache Tribal Court*, 566 F.3d 842, 844 (9th Cir. 2009); *Ford Motor Co. v. Todecheene*, 488 F.3d 1215, 1216–17 (9th Cir. 2007).

34.      The Insurers have exhausted all available tribal remedies before the Tribal Court and Tribal Court of Appeals. Making a limited special appearance, the Insurers moved to dismiss the Tribal Court Action for lack of jurisdiction. The motions were heard and denied by the Tribal Court, and the Insurers sought interlocutory appellate review of the Tribal Court's decision. The Tribal Court of Appeals accepted interlocutory review and affirmed the lower court's decision. The Insurers have therefore exhausted tribal remedies. *See, e.g.*, *Big Horn Cty. Elec. Coop., Inc. v. Big Man*, 2018 WL 4603276, at *3 (D. Mont. Sept. 25, 2018) ("In *Elliot* [sic] and *Ford Motor*

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000

*Co.*, the Ninth Circuit instructed once the issue of jurisdiction has been decided by the tribal appellate court, a non-Indian has satisfied the exhaustion requirement even if the merits remain to be determined.").

## IV. BACKGROUND AND PROCEDURAL HISTORY

### A.   The Underlying Insurance Contracts

35.   The Port Gamble S'Klallam Tribe (referred to previously and throughout as the "Tribe") is a federally recognized Indian tribe located in Kingston, Washington, and situated on the Port Gamble S'Klallam Tribal Reservation (referred to previously and throughout as the "Reservation").

36.   The Noo-Kayet Development Corporation (referred to previously and throughout as "Noo-Kayet") is a federally chartered corporation wholly owned by the Tribe.  Noo-Kayet is located in Kingston, Washington, and is situated on the Reservation.  Noo-Kayet operates various businesses owned by the Tribe within the exterior boundaries of the Reservation, including the Noo-Kayet Gaming Corporation d/b/a the Point Casino and Hotel, the Gliding Eagle Market LLC d/b/a Gliding Eagle Market, and the Point Market LLC d/b/a Kountry Korner.

37.   The Tribe and Noo-Kayet are insured through a nationwide property insurance program known as the Tribal Property Insurance Program ("TPIP"), which is part of a larger property insurance program known as the Alliant Property Insurance Program ("APIP") that also insures municipalities, hospitals, and non-profit organizations.

38.   TPIP is maintained and administered by a third-party service called "Tribal First," which is a specialized program of Alliant Specialty Insurance Services, Inc. and/or Alliant Insurance Services, Inc. (collectively, "Tribal First" or "Alliant").  Alliant Specialty Insurance Services, Inc. and Alliant Insurance Services, Inc. are registered California corporations located in Newport Beach, California.  In maintaining and administering TPIP, Alliant processes submissions for insurance; collects premiums; prepares and provides quotes, cover notes, policy documentation and evidences of insurance; and develops and maintains an underwriting file for each insured under TPIP.

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
(213) 229-7000

39.     Various insurance carriers, including the Insurers, participate in APIP (and its subprogram TPIP) by providing insurance and underwriting services at different layers of coverage and varying percentages of risk insured by those layers.  Several of the layers of coverage provided to TPIP insureds are subject to aggregate coverage limits.  As a result, covered losses paid to one insured can reduce the coverage limit available to other insureds during any single policy period.

40.     Through TPIP, the Tribe was provided multiple property insurance policies by the participating carriers for the policy period from July 1, 2019, to July 1, 2020, including but not limited to Lexington Policy No. 017471589/06 (Dec 31) 9367; Homeland Policy No. 798000253; Hallmark Policy Nos. 73PRX19A1BE and 73PRX19A1F4; Aspen Specialty Policy No. PX006CP19A; Aspen Insurance UK Policy No. PRAGET719; and the London-based Carriers Policy Nos. PJ193647, PJ1900131, PJ1933021, PD-10367-05, and PJ1900134-A.

41.     Likewise, through TPIP, Noo-Kayet was provided multiple property insurance policies by the participating carriers for the policy period from July 1, 2019, to July 1, 2020, including but not limited to Lexington Policy No. 017471589/06 (Dec 37) 9265; Homeland Policy No. 798000259; Hallmark Policy Nos. 73PRX19A1BE and 73PRX19A1F4; Aspen Specialty Policy No. PX006CP19A; Aspen Insurance UK Policy No. PRAGET719; and the London-based Carriers Policy Nos. PJ193647, PJ1900131, PJ1933021, PD-11091-00, and PJ1900134-A.

42.     The Tribe and Noo-Kayet negotiated and obtained their property insurance policies for the 2019-2020 policy period through Alliant, based on underwriting guidelines established between Alliant and the TPIP carriers.[2]

43.     The Tribe and Noo-Kayet did not negotiate or obtain their property insurance policies for the 2019-2020 policy period directly from the Insurers or any other TPIP carrier.

44.     The Insurers and the other TPIP carriers negotiated and entered into separate and independent contracts with Alliant and/or brokers setting forth each TPIP insurer's obligations under TPIP.

---

[2] Upon information and belief, the Tribe and Noo-Kayet also purchased insurance coverage through a broker, Brown & Brown.

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
(213) 229-7000

45.    The Insurers and the other TPIP carriers did not have direct contact with potential TPIP insureds, including the Tribe and Noo-Kayet, before the issuance of the property insurance policies for the 2019-2020 policy period.  The Insurers the other TPIP carriers learned of potential TPIP insureds, including the Tribe and Noo-Kayet, only through Alliant.  On information and belief, Alliant (not the Insurers) processed the Tribe's and Noo-Kayet's submissions for insurance; collected premiums from the Tribe and Noo-Kayet; prepared and provided quotes, cover notes, policy documentation and evidences of insurance to the Tribe and Noo-Kayet; and developed and maintained an underwriting file for the Tribe and Noo-Kayet.

46.    Each property insurance policy provided through TPIP to the Tribe and Noo-Kayet for the 2019-2020 policy period incorporates a master policy form referred to as the Tribal First Policy Wording, TPIP USA Form No. 15, which sets forth the terms, conditions, and exclusions of coverage applicable to the Tribe and Noo-Kayet (collectively, the "Policy").

47.    The Policy does not contain any provision through which the Insurers consent to the jurisdiction of the Tribe or its Tribal Court.

48.    The Policy does not contain any provision through which the Insurers consent to the laws of the Tribe governing the interpretation of the Policy.

49.    The Policy contains a "Service of Suit (U.S.A.)" provision, which states as follows:

**AE.  SERVICE OF SUIT (U.S.A.)**

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Named Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon:

FLWA Service Corp, c/o Foley and Lardner LLP, 555 California Street, Suite 1700, San Francisco, CA 94104-1520 (applicable to all markets except as noted below) and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Named Insured (or Reinsured) to give a written undertaking to the Named Insured (or Reinsured) that

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
(213) 229-7000

they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom The said officer is authorized to mail such process or a true copy thereof.

50.    The Policy itself does not specifically name any TPIP insured, including either the Tribe or Noo-Kayet.  And the Policy does not specifically name any TPIP carrier, including the Insurers.

51.    The Policy states that the "Named Insured" is "shown on the Declaration page, or as listed in the Declaration Schedule Addendum attached to this policy," and that Tribal First (*i.e.*, Alliant) maintains a "Named Insured Schedule" in its files.

52.    Copies of the Policy and other related documents were prepared by Alliant and provided to the Tribe and Noo-Kayet by Alliant (not any of the Insurers).  True and correct copies of the documents provided to the Tribe by Alliant are attached hereto as **Exhibit A**.  True and correct copies of the documents provided to Noo-Kayet by Alliant are attached hereto as **Exhibit B**.  Included among those documents were Declaration pages associated with the Lexington property insurance policies issued to the Tribe and Noo-Kayet.  In each of those Declaration pages, the "Named Insured" is identified as "All Entities listed as Named Insureds on file with Alliant Insurance Services, Inc.," and the "Mailing Address of Insured" is identified as "As on file with Alliant Insurance Services, Inc. c/o 325 E. Hillcrest Dr. Suite 250, Thousand Oaks, CA 91360."

53.    Also included among the documents related to the Policy that were prepared and provided by Alliant (not any of the Insurers) to the Tribe and Noo-Kayet were documents entitled "Tribal Property Insurance Program Evidence of Coverage."   The Evidence of Coverage documents are printed on "Tribal First Alliant Underwriting Solutions" letterhead and signed by Ray Corbett, Senior Vice President of Alliant Specialty Insurance Services.  They indicate that they were prepared by Alliant "as a matter of convenience" and were "based on facts and

COMPLAINT
No. __
Page 15

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
(213) 229-7000

representations supplied to [Alliant] by [the Tribe and Noo-Kayet, respectively]."  They also indicate that any "Notification of Claims" must be sent to "Tribal First" by way of a P.O. Box in San Diego, California.

**B.     The Tribe's and Noo-Kayet's COVID-19-Related Insurance Claims**

54.     In March 2020, the Tribe and Noo-Kayet temporarily suspended some of their non-essential business operations because of the COVID-19 pandemic.

55.     In April 2020, the Tribe and Noo-Kayet submitted insurance claims under the Policy to Tribal First:

> a.     On April 8, 2020, Noo-Kayet submitted an insurance claim under the Policy to Tribal First by email, stating in relevant part:

> Noo-Kayet Development Corporation (NKDC) has suffered a significant Business Income Loss due to the COVID-19 pandemic and physical loss of use and physical damage the pandemic has caused to NKDC insured properties and other properties surrounding NKDC insured properties.   NKDC initially closed the Point Casino and Hotel on March 18, 2020.   NKDC closed the Point Market d/b/a Kountry Korner on March 24, 2020.   NKDC made the decision to continue the closure of these facilities after Governor Inslee issued an order closing all non-essential businesses on March 23, 2020.   NKDC submits this notice of claim under its Property policy and any and all available coverages under that policy and any other insurance policy issued by you.   NKDC is in the process of compiling loss information relating to these entities, and will provide such information when it becomes available.   In the interim, please acknowledge receipt of this notice of claim.

> b.     On April 28, 2020, the Tribe submitted an insurance claim under the Policy to Tribal First by email, stating in relevant part:

> Please find below a New Property Claim DOL 3/18/2020 for the Port Gamble S'Klallam Tribe. Below is the Notice from the Tribe.

> The Port Gamble S'Klallam Tribe (Tribe) has suffered tax revenue and business income loss due to the COVID-19 pandemic.  Most notably, Noo-Kayet Development Corporation (NKDC) initially closed the Point Casino and Hotel on March 18, 2020, and the Point Market d/b/a Kountry Korner on March 24, 2020. The Port Gamble S'Klallam Foundation (Foundation) initially closed Heronswood on March 17, 2020. Decisions were made to continue the closure of these facilities after Washington State Governor Jay Inslee issued an order closing all non-essential businesses on March 23, 2020. The Tribe derives tax revenues and business income from NKDC and the Foundation, which revenues and income have been interrupted due to the COVID-19 pandemic.  The Tribe submits this notice of claim under its Property

policy and any and all available coverages under that policy and any other insurance policy issued by you. The Tribe is in the process of compiling revenue and income loss information relating to these and any other entities, and will provide such information when it becomes available. In the interim, please acknowledge receipt of this notice of claim.

56. Tribal First transmitted Noo-Kayet's and the Tribe's insurance claims to Lexington.

57. All contractual activity by Lexington related to the Policy and to Noo-Kayet's and the Tribe's insurance claims occurred away from the Reservation and did not occur on land held by the Tribe or within the exterior boundaries of the Reservation.

58. After receiving Noo-Kayet's insurance claim, Lexington issued letters to Noo-Kayet, dated April 20 and May 7, 2020, reserving "all rights and defenses under the policy and the law" and requesting additional information concerning Noo-Kayet's insurance claim. In a separate email, dated April 27, 2020, Lexington requested additional information from Noo-Kayet concerning its insurance claim. The April 20 and May 7 letters and April 27 email were prepared, drafted, and emailed by or on behalf of Lexington from outside the territorial boundaries of the Tribe, on non-Reservation and non-tribal land.

59. After receiving the Tribe's insurance claim, Lexington issued a letter to the Tribe, dated May 8, 2020, reserving "all rights and defenses under the policy and the law." In a separate email, dated May 21, 2020, Lexington requested additional information from the Tribe concerning its insurance claim. The May 8 letter and May 21 email were prepared, drafted, and emailed by or on behalf of Lexington from outside the territorial boundaries of the Tribe, on non-Reservation and non-tribal land.

60. On May 27, 2020, by email, counsel for Noo-Kayet provided to Lexington "preliminary responses" to Lexington's requests for information.

61. On May 29, 2020, by email, counsel for the Tribe provided to Lexington "preliminary responses" to Lexington's requests for information.

62. On June 4, 2020, the Tribe and Noo-Kayet initiated legal proceedings in the Tribal Court against Lexington and other Insurers.

63.     Homeland was first notified of the Tribe and Noo-Kayet's insurance claims on June 22, 2020, when it received notice of the June 4, 2020 legal proceeding initiated by the Tribe and Noo-Kayet.

**C.     The Tribal Court Action**

64.     The Tribal Court Action is captioned *Port Gamble S'Klallam Tribe v. Lexington Insurance Company*, No. POR-C1-2020-0014-G.

65.     Defendant Neal presides over the Tribal Court Action.

66.     In its original complaint in the Tribal Court Action, the Tribe and Noo-Kayet brought causes of action for declaratory judgment and breach of contract against the Insurers.

67.     The Tribe and Noo-Kayet's original complaint in the Tribal Court Action alleged only as follows regarding jurisdiction:

> Pursuant to Article I of the Constitution of the Port Gamble S'Klallam Tribe and Port Gamble S'Klallam Tribal Code Sections 1.02.01 and 3.09.05, jurisdiction is proper because the Defendants have entered into insurance contracts with the Plaintiffs, who own and operate the Tribal Businesses that are headquartered or located on the Reservation.  Moreover, the Tribal Court has jurisdiction over each of the Defendants because each of the Defendants entered into consensual agreements, i.e., the insurance contracts, with the Tribe and with Noo-Kayet, and otherwise subjected themselves to Tribal jurisdiction.  *See Montana v. United States*, 450 U.S. 544, 565-66 (1981); *Water Wheel Camp Recreational Area, Inc. v. LaRance*, 642 F.3d 802 (9th Cir. 2011).  In addition, the Tribal Court has jurisdiction over the Defendants because each of the Defendants expressly agreed to "submit to the jurisdiction" of any court of competent jurisdiction in the United States.

68.     On August 17, 2020, Lexington moved to dismiss the Tribal Court Action for lack of subject matter and personal jurisdiction under both Port Gamble S'Klallam tribal law and federal law.[3]   The other Insurers also moved to dismiss for lack of jurisdiction and joined Lexington's motion.

69.     On October 26, 2020, the Tribe and Noo-Kayet filed their opposition to the motions.

70.     On November 16, 2020, the Insurers filed their replies in support of dismissal for lack of jurisdiction.

---

[3]  Lexington also moved to dismiss under the doctrine of *forum non conveniens*.

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
(213) 229-7000

71.     On February 5, 2021, by videoconference, Defendant Neal, as presiding judge of the Tribal Court, heard oral argument on the motions to dismiss for lack of jurisdiction.

72.     On March 1, 2021, Defendant Neal, as presiding judge of the Tribal Court, issued a written order denying the Insurers' motions to dismiss for lack of jurisdiction.

73.     On April 1, 2021, the Insurers moved for permission to appeal, which Defendant Nielsen, as Chief Judge of the Tribal Court of Appeals, granted on April 30, 2021.

74.     On June 1, 2021, the Insurers filed their opening appellate brief.

75.     On July 1, 2021, the Tribe and Noo-Kayet filed their response brief.

76.     On July 15, 2021, the Insurers filed their reply brief.

77.     On August 24, 2021, by videoconference, Defendants Nielsen, Ford, and Cardoza, as presiding judges of the Tribal Court of Appeals, heard oral argument on the appeal.

78.     On September 29, 2021, Defendants Nielsen, Ford, and Cardoza, as presiding judges of the Tribal Court of Appeals, issued a written decision affirming the Tribal Court's denial of the Insurers' motions to dismiss for lack of jurisdiction.  A true and correct copy of the Tribal Court of Appeals' written decision is attached hereto as **Exhibit C**.

79.     On October 14, 2021, Port Gamble and Noo-Kayet filed a first amended complaint in the Tribal Court Action.

80.     The Tribe and Noo-Kayet's first amended complaint in the Tribal Court Action added the following statement to their allegations regarding jurisdiction:

> Tribal Court jurisdiction was recently confirmed by the Port Gamble S'Klallam Court of Appeals.  *See* Opinion, *Port Gamble S'Klallam Tribe et al. v. Lexington Ins. Co. et al.*, Case No. POR-AP-2021-0001 (amended Oct. 7, 2021).

81.     On November 8, 2021, the Tribe and Noo-Kayet filed notarized verifications to the first amended complaint, as required under Section 3.02.02(f) of the Port Gamble S'Klallam Law and Order Code.

82.     On November 10, 2021, the Insurers asked the Tribe and Noo-Kayet to stipulate to a deadline time to respond to the amended complaint.  The Tribe and Noo-Kayet agreed to give the Insurers only until December 1, 2021, to file their responsive pleadings.  On November 29,

COMPLAINT
No. ___
Page 19

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
(213) 229-7000

2021, Lexington moved the Tribal Court for an additional fourteen days to respond to the amended complaint, but the Tribal Court did not act on the motion.

83.    On December 1, 2021, the Insurers filed answers to the Tribe and Noo-Kayet's first amended complaint to avoid default.

84.    The Tribal Court Action remains ongoing, and the Tribal Court continues to exercise jurisdiction over the Insurers.

## V.    GENERAL ALLEGATIONS AND LEGAL AUTHORITIES

85.    Under Supreme Court and other federal precedent, the Tribal Court does not have the authority to exercise jurisdiction over the Insurers, and the Tribal Court's ongoing exercise of tribal jurisdiction over the Insurers is unlawful.

### A.    The Presumption Against Tribal Jurisdiction Over the Insurers

86.    Indian "tribes do not, as a general matter, possess authority over non-Indians who come within their borders." *Plains Commerce Bank*, 554 U.S. at 328.  Thus, the exercise of jurisdiction by a tribal court over a nonmember is "presumptively invalid." *Id.* at 330 (citing *Atkinson Trading Co. v. Shirley*, 532 U.S. 645, 659 (2001)).

87.    This general rule against tribal jurisdiction over nonmembers derives from the historically "unique and limited character" of tribal sovereignty. *United States v. Cooley*, 141 S. Ct. 1638, 1642 (2021).  When tribes were incorporated into the United States, they became "dependent" sovereigns and "lost many of the attributes of sovereignty." *Montana*, 450 U.S. at 563–64.  Among those lost attributes was the ability to freely and independently determine their external relations with nonmembers. *See Cooley*, 141 S. Ct. at 1642–43 (citing *United States v. Wheeler*, 435 U.S. 313, 326 (1978)); *see also Plains Commerce Bank*, 554 U.S. at 328 ("This general rule restricts tribal authority over nonmember activities taking place on the reservation"); *Montana*, 450 U.S. at 564–65 ("[T]he inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe.").

88.    The Insurers are nonmembers of the Tribe and have no say in the laws and regulations that govern the Tribe and the Tribe's lands and members.

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
(213) 229-7000

89.     Because the Insurers are nonmembers of the Tribe, the Tribal Court's exercise of jurisdiction over them is presumptively invalid.

90.     The Tribal Court of Appeals declined to apply the presumption against tribal jurisdiction over Lexington and Homeland because it found that there were "seemingly inconsistent rulings" from the Supreme Court on the issue. Specifically, the Tribal Court of Appeals was concerned with a single statement by the Supreme Court in *LaPlante* that tribal jurisdiction over nonmembers "presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute." 480 U.S. at 18.

91.     Yet, as the Supreme Court clarified in *Strate v. A-1 Contractors*, 520 U.S. 438, 451–53 (1997), this statement in *LaPlante* refers only to the tribal exhaustion requirement, which requires that questions of tribal jurisdiction over nonmembers first be heard by a tribal court rather than a federal court. *LaPlante*, therefore, does not state an "inconsistent" ruling regarding the presumption against tribal jurisdiction over nonmembers. Nor does *LaPlante* warrant ignoring the presumption. As put by Justice Souter in his concurring opinion in *Nevada v. Hicks*, 533 U.S. 353, 381 (2001), "in explaining and distinguishing [*LaPlante*], we confirmed in *Strate* what we had indicated in *Montana*: that as a general matter, a tribe's civil jurisdiction does not extend to the 'activities of non-Indians on reservation lands' and that the only such activities that trigger civil jurisdiction are those that fit within one of *Montana*'s two exceptions."

**B.     The *Montana* Exceptions**

92.     In *Montana*, the Supreme Court recognized two narrow exceptions to the general rule against tribal jurisdiction over nonmembers. First, a tribe "may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Montana*, 450 U.S. at 565. Second, a tribe may "exercise civil authority over the conduct of non-Indians on fee lands within its reservations when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Id.* at 566.

93.     The Supreme Court has explained that the *Montana* exceptions are "limited" and must not be construed in a manner that would "swallow the rule" or "severely shrink it." *Cooley*,

COMPLAINT
No. __
Page 21

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
(213) 229-7000

141 S. Ct. at 1645 (citation omitted); *Plains Commerce Bank*, 554 U.S. at 330 (citations omitted). Indeed, with "one minor exception, [the Supreme Court has] never upheld under *Montana* the extension of tribal civil authority over nonmembers on non-Indian land." *Hicks*, 533 U.S. at 359–60.

94.    Moreover, the "burden rests on the tribe to establish one of the exceptions to *Montana*'s general rule that would allow an extension of tribal authority to regulate nonmembers." *Plains Commerce Bank*, 554 U.S. at 330.

95.    The Tribe has not met and cannot meet this burden.

### 1.    The First *Montana* Exception Does Not Apply

96.    The Tribal Court of Appeals held that the first *Montana* exception permits the exercise of tribal jurisdiction over the Insurers in the Tribal Court Action.

97.    The Tribal Court of Appeals, however, misapplied the first *Montana* exception and expanded the reach of the Tribe's authority in violation of federal law.

98.    The first *Montana* exception permits the exercise of tribal jurisdiction over the "activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Montana*, 450 U.S. at 565.

99.    The Supreme Court has explained that "*Montana*'s list of cases fitting within the first exception indicates the type of activities the Court had in mind." *Strate*, 520 U.S. at 456–57. Each of the cases on *Montana*'s list involves nonmember *activity on the land*, within the territorial boundaries of a tribe. *See id.* at 446 ("*Montana* thus described a general rule that, absent a different congressional direction, Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation . . . .").

100.    The first case cited by *Montana* was *Williams v. Lee*, 358 U.S. 217 (1959). *Williams* concerned a payment dispute between tribal customers and a nonmember's general store on tribal land. *Id.* at 217–18. Tribal jurisdiction was affirmed because the nonmember business owner "was on the reservation and the transaction with an Indian took place there." *Id.* at 223. The remaining three cases cited by *Montana* concerned the taxation of businesses owned and operated by nonmembers on tribal lands. *See Morris v. Hitchcock*, 194 U.S. 384, 390 (1904)

(permit tax on nonmember-owned livestock within the territorial boundaries of a tribe); *Buster v. Wright*, 135 F. 947, 950 (8th Cir. 1905) (permit tax for nonmember trading posts within the territorial boundaries of a tribe); *Washington v. Confederated Tribes of Colville Indian Rsrv.*, 447 U.S. 134, 152–54 (1980) (tax on cigarette sales to nonmembers within tribal reservation).

101.    In keeping with *Montana* (which was decided in 1981) and *Strate* (which was decided in 1997), the Supreme Court has since observed that its "*Montana* cases have *always* concerned nonmember conduct *on the land*." *Plains Commerce Bank*, 554 U.S. at 334 (emphases added); *see also id.* at 328 (the "general rule" announced in *Montana* "restricts tribal authority over nonmember activities taking place on the reservation"); *Cooley*, 141 S. Ct. at 1643 ("We have subsequently repeated *Montana*'s proposition and exceptions in several cases involving a tribe's jurisdiction over the activities of non-Indians within the reservation.").

102.    Allowing tribal jurisdiction over nonmember conduct "on the land" fits squarely within the territorial limitations on tribal sovereignty. *See Plains Commerce Bank*, 554 U.S. at 330 (tribal sovereignty "centers on the land held by the tribe"); *Hicks*, 533 U.S. at 392 ("tribes retain sovereign interests in activities that occur on land owned and controlled by the tribe"). As the Ninth Circuit has stated, "tribal jurisdiction is, of course cabined by geography: The jurisdiction of tribal courts does not extend beyond tribal boundaries." *Philip Morris USA, Inc. v. King Mountain Tobacco Co.*, 569 F.3d 932, 938 (9th Cir. 2009).

103.    Other federal appellate courts have specifically observed that "*Montana* and its progeny permit tribal regulation of nonmember *conduct inside the reservation*." *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 782 (7th Cir. 2014) (citation omitted); *accord Hornell Brewing Co. v. Rosebud Sioux Tribal Ct.*, 133 F.3d 1087, 1091 (8th Cir. 1998) ("Neither *Montana* nor its progeny purports to allow Indian tribes to exercise civil jurisdiction over the activities or conduct of non-Indians occurring *outside their reservations*.").

104.    The Seventh Circuit, for example, has determined that *Montana*'s first exception does not apply to off-reservation conduct arising from contractual relationships between a nonmember and a tribe or its members. In *Jackson*, nonmember consumers brought a putative class action against several loan companies owned by a tribal member who resided on tribal land.

COMPLAINT
No. __
Page 23

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
(213) 229-7000

764 F.3d at 768. The loan entities argued that the tribal court had jurisdiction under the first *Montana* exception because the nonmember consumers entered into loan agreements with entities owned by the tribal member through contracts that included forum-selection clauses requiring litigation to be conducted in tribal court. *Id.* at 781–82. The Seventh Circuit held that the tribal court could not exercise jurisdiction over the loan dispute, explaining that the plaintiffs had "not engaged in *any* activities inside the reservation. They did not enter the reservation to apply for the loans, negotiate the loans, or execute the loan documents." *Id.* at 782. And "[b]ecause the Plaintiffs' activities d[id] not implicate the sovereignty of the tribe over its land and its concomitant authority to regulate the activity of nonmembers on the land, the tribal courts d[id] not have jurisdiction over the Plaintiffs' claims." *Id.*

105. The Seventh Circuit reaffirmed this principle in *Stifel, Nicolaus & Co. v. Lac du Flambeau Band of Lake Superior Chippewa Indians*, 807 F.3d 184, 207 (7th Cir. 2015), rejecting the argument of tribal defendants that "the court need not limit its consideration [of the first *Montana* exception] to the on-reservation actions of [nonmembers]." The court had "made clear in *Jackson* . . . that *Plains Commerce Bank* 'circumscribed' the already narrow *Montana* exceptions" and "that a tribe's authority to regulate nonmember conduct 'centers on the land.'" *Id.* On this basis, the court upheld a preliminary injunction enjoining tribal judicial officials from pursuing further tribal-court proceedings, given that none of the nonmember conduct at issue occurred "on tribal land." *Id.* at 207–09.

106. The Tribal Court of Appeals rejected that "physical presence on tribal land is a necessary requirement" for tribal jurisdiction, in part because it did "not find that any federal courts have squarely addressed the issue." The Tribal Court of Appeals, however, ignored that the application of *Montana* has "always" concerned nonmember conduct "on the land," within the territorial boundaries of a tribe, *Plains Commerce Bank*, 554 U.S. at 334, and that a nonmember's "physical presence" on tribal land is a requirement that inheres within the geographically limited nature of tribal jurisdiction and sovereignty.

107. The first *Montana* exception does not apply here.

    a. The Insurers are nonmembers of the Tribe.

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000

b.   Although the Insurers have contractual insurance relationships with the Tribe (and its tribal corporation, Noo-Kayet), the Insurers have not engaged in any activity related to those contracts on the Tribe's land or within the territorial boundaries of the Tribe.

c.   All conduct by the Insurers relating to their insurance contracts with the Tribe (and Noo-Kayet), including all review and consideration of the insurance claims at issue, occurred off the Tribe's land, outside the territorial boundaries of the Tribe.

d.   The Tribal Court Action involves legal questions concerning the interpretation of contractual terms and provisions and so does not concern specific conduct by the Insurers on the Tribe's land or within the territorial boundaries of the Tribe.

e.   Thus, the Tribal Court lacks the authority to exercise tribal jurisdiction over the Insurers in the Tribal Court Action.

108.   As part of its analysis of the first *Montana* exception, the Tribal Court of Appeals relied on and found instructive *Allstate Indemnity Co. v. Stump*, 191 F.3d 1071 (9th Cir. 1999). *Allstate* involved a car accident between tribal members on a tribal reservation and claims of bad faith against a nonmember insurance company for refusing to settle the resulting personal-injury action. *Id.* at 1074. The Ninth Circuit did *not* hold that tribal court jurisdiction applied to the nonmember insurance company's conduct. Instead, it recognized that a "colorable" argument for tribal jurisdiction existed and required the parties to exhaust tribal remedies in tribal court. *Id.* at 1075.

109.   Neither the Supreme Court nor any other federal appellate court has held that an insurance relationship with a tribe or its members is enough to establish tribal jurisdiction over a nonmember insurer. *See, e.g.*, *Admiral Ins. Co. v. Blue Lake Rancheria Tribal Court*, 2012 WL 1144331, at *6 (N.D. Cal. Apr. 4, 2012) (expressing doubt as to a tribal court's jurisdiction over a nonmember based merely on an insurance contract, because *Hicks* and *Plains Commerce Bank* may have "alter[ed] the viability of *Allstate*'s holding").

COMPLAINT
No. __
Page 25

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
(213) 229-7000

110.     As part of its analysis of the first *Montana* exception, the Tribal Court of Appeals also found instructive *State Farm Insurance Cos. v. Turtle Mountain Fleet Farm LLC*, 2014 WL 1883633 (D.N.D. May 12, 2014), an unpublished district court decision from North Dakota.  The court in *State Farm* held that tribal court jurisdiction existed over a nonmember insurance company.  *Id.* at *11.  The court explained that the focus of the first *Montana* exception is "whether there is a sufficient nexus between the claims being asserted and the consensual relationship," not "where the conduct [of the nonmember] took place."  *Id.* at *10.  Although the exercise of tribal jurisdiction must have a nexus to the consensual relationship between the tribal entity and nonmember, this requirement does not *replace* the need for the exercise of tribal jurisdiction to pertain to nonmember conduct on the land, as the court in *State Farm* (as well as the Tribal Court of Appeals) incorrectly held.

111.     As discussed, where an insurer has not engaged in relevant activity on a Tribe's land, the first *Montana* exception does not apply.  *See Jackson*, 764 F.3d at 782; *Stifel*, 807 F.3d at 208; *see also, e.g.*, *Progressive Specialty Ins. Co. v. Burnette*, 489 F. Supp. 2d 955, 958 (D.S.D. 2007) (neither *Montana* exception applied to nonmember insurer that provided automobile insurance to tribal members, because the insurer "never maintained an office or established any other physical presence on the reservation" and never "entered tribal lands or . . . [directly] conducted any business with the Tribe"); *Smith v. W. Sky Fin., LLC*, 168 F. Supp. 3d 778, 783 (E.D. Pa. 2016) (finding no tribal jurisdiction over nonmember's activities under a loan agreement, all of which occurred "off of the reservation," even though "contracts formed over the Internet create ambiguity as to place"); *Hengle v. Asner*, 433 F. Supp. 3d 825, 862 (E.D. Va. 2020) (finding no "colorable" basis for tribal court jurisdiction where nonmembers with loan agreements with various tribal entities "obtained, negotiated and executed their loans from their residences in Virginia through websites maintained by companies in Kansas, far from the Tribe's reservation in California," and where the nonmembers "made loan payments from Virginia to payment processors operating out of Kansas").

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
(213) 229-7000

2.    **The Second** *Montana* **Exception Does Not Apply**

112.    The second *Montana* exception permits the exercise of tribal jurisdiction over a nonmember whose conduct "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe."  *Montana*, 450 U.S. at 566.

113.    The Tribe has never asserted that this exception applies with regard to the Insurers or the Tribal Court Action.  Likewise, the Tribal Court of Appeals did not consider or decide whether the second *Montana* exception permits the exercise of tribal jurisdiction over the Insurers in the Tribal Court Action.

114.    There is a reason the Tribe has never argued the point:  The second *Montana* exception does not permit the exercise of tribal jurisdiction over the Insurers.

115.    The second *Montana* exception has a particularly "elevated threshold."  *Plains Commerce Bank*, 554 U.S. at 341.  The challenged conduct "must do more than injure the tribe, it must 'imperil the subsistence' of the tribal community," and the exercise of tribal jurisdiction over that conduct must be "necessary to avert catastrophic consequences."  *Id.* (citation omitted).

116.    The elevated threshold of the second *Montana* exception has not been met here.

   a.    None of the nonmember conduct at issue in the Tribal Court Action threatens or has a direct effect on the political integrity, the economic security, or the health or welfare of the Tribe, and the Tribe has provided no evidence of such a threat or effect.

   b.    None of nonmember conduct at issue in the Tribal Court Action imperils the subsistence of the Tribe's community, and the Tribe has provided no evidence of such imperilment.

   c.    The Tribal Court's exercise of jurisdiction in the Tribal Court Action is not necessary to avert catastrophic consequences, and the Tribe has provided no evidence of such consequences.

### 3.   The Exercise of Tribal Jurisdiction Does Not Stem from the Tribe's Inherent Sovereign Authority

117.   As a threshold matter, for either *Montana* exception to apply, a tribe's exercise of jurisdiction "must stem from [its] inherent sovereign authority to set conditions on entry, preserve tribal self-government, or control internal relations."  *Plains Commerce Bank*, 554 U.S. at 336–37.  The Tribe's exercise of tribal jurisdiction here does not stem from such inherent sovereign authority.

118.   As the Supreme Court explained in *Plains Commerce Bank*, nonmember "activities or land uses may be regulated" only to the extent that they "intrude on the internal relations of the tribe or threaten self-rule."  *Id.* at 334–35.  This is because "certain forms of nonmember behavior . . . may sufficiently affect the tribe as to justify tribal oversight," even though "tribes generally have no interest in regulating the conduct of nonmembers."  *Id.*  In other words, tribes "may regulate nonmember behavior that implicates tribal governance and internal relations."  *Id.*

119.   Indeed, this requirement is stated in *Montana* itself:  The "exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the tribes."  *Montana*, 450 U.S. at 564.

120.   Thus, if the exercise of tribal jurisdiction over a nonmember "cannot be justified by reference to the tribe's sovereign interests," it is invalid.  *Plains Commerce Bank*, 554 U.S. at 336; *see also Strate*, 520 U.S. at 459 (the *Montana* exceptions apply only where tribal adjudicatory or regulatory authority "is needed to preserve the right of reservation Indians to make their own laws and be ruled by them").

121.   The Supreme Court and several federal appellate courts have expressly applied this threshold requirement in deciding there is no tribal jurisdiction.

      a.   *Plains Commerce Bank*, 554 U.S. at 336–37:  The Supreme Court found that a tribal court lacked jurisdiction over a dispute involving the sale of non-Indian fee land by a nonmember bank.  The Court explained that regulating the sale of non-Indian fee land could not be justified by the tribe's sovereign interests of "protecting internal relations and self-government," because the "mere fact of

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
(213) 229-7000

resale" had not threatened those interests.  Certain "*uses* to which land is put" by a nonmember very well could implicate sovereign interests, but no such use of land was at issue, and the tribe therefore lacked authority over the sale.

b.  *Jackson*, 764 F.3d at 783 :  The Seventh Circuit rejected the argument that "a nonmember's consent to tribal authority" was "sufficient to establish the jurisdiction of a tribal court," because the tribal court's jurisdiction over nonmembers must also "stem from the tribe's inherent sovereign authority." And the dispute at issue, concerning off-reservation loan activity, did not implicate "*any* aspect of 'the tribe's inherent sovereign authority.'"

c.  *Kodiak Oil & Gas (USA) Inc. v. Burr*, 932 F.3d 1125, 1138 (8th Cir. 2019): The Eighth Circuit decided that a tribal court lacked jurisdiction over nonmember oil and gas companies accused of failing to pay royalties under leases with various tribal members.  The Eighth Circuit explained that although the leases were "consensual relationships with tribal members," a "consensual relationship alone is not enough" to establish tribal jurisdiction.  The exercise of tribal jurisdiction had to stem from the tribe's sovereign interests, and the regulation of nonmember companies and their lease-related activity was "not necessary for tribal self-government or controlling internal relations."

d.  *Nat'l Lab. Rels. Bd. v. Little River Band of Ottawa Indians Tribal Gov't*, 788 F.3d 537, 546 (6th Cir. 2015):  The Sixth Circuit held that the National Labor Relations Board had authority to regulate the labor-organizing activity of a tribe's casino employees and to prevent the tribe's enforcement of conflicting tribal laws, because imposing federal labor laws on the tribe did not interfere with the tribe's self-governance.  The court reviewed "the law governing implicit divestiture of tribal sovereignty" and concluded that in *Montana*, *Hicks*, and *Plains Commerce Bank*, the Supreme Court has repeatedly made clear that a tribe's "power to regulate the activities of non-members is constrained, extending only so far as 'necessary to protect tribal self-government or to

control internal relations'" and that "[t]ribal regulations of non-member activities must 'flow directly from these limited sovereign interests.'" The Sixth Circuit determined that labor regulations concerning tribal and non-tribal casino employees did not sufficiently implicate those interests.

122.    The exercise of tribal jurisdiction over the Insurers in the Tribal Court Action is not necessary to protect tribal self-government or to control internal relations, and is therefore invalid.

123.    The Tribal Court Action concerns the interpretation of contractual terms and conditions affecting nonmember conduct occurring off the Tribe's land, outside the Tribe's territorial boundaries.  Thus, the exercise of tribal jurisdiction over the Insurers' conduct under the contracts does not implicate or stem from the Tribe's "sovereign interests in activities that occur *on land* owned and controlled by the tribe."  *Hicks*, 533 U.S. at 392 (emphasis added); *Plains Commerce Bank*, 554 U.S. at 327 (tribal sovereignty "centers on the land held by the tribe and on non-tribal members within the reservation"); *see, e.g.*, *Stifel*, 807 F.3d at 207 ("The actions of nonmembers outside of the reservation do not implicate the Tribe's sovereignty.").

124.    Further, as an insurance contract dispute, this case does not implicate tribal sovereignty because the Tribe does not regulate insurance in the first place.  Of the 31 Titles that make up the Tribe's Law and Order Code, *none* concerns insurance.  By comparison, in the State of Washington, the authority to set insurance policy and to regulate insurance is vested in the Insurance Commissioner, whose duties include rulemaking, investigation, and oversight of a broad range of insurance matters.  *See, e.g.*, RCW 48.02.010, RCW 48.02.060, *et seq.*; *see also* 15 U.S.C. § 1011 ("Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that the silence on the part of the Congress shall not be construed as to impose any barrier to the regulation or taxation of such business by the several States.").  The absence of insurance regulation by the Tribe and the comparatively exclusive regulation of insurance by the State of Washington, and others, indicates that the exercise of jurisdiction by the Tribal Court over the Insurers' conduct under the contracts is not and has not been necessary to protect tribal self-government or to control internal relations.  A state or federal court of competent jurisdiction can just as easily decide the contractual dispute at issue here—

without endangering or compromising the Tribe's sovereignty. *See Kodiak Oil*, 932 F.3d at 1138 (rejecting application of first *Montana* exception where "complete federal control of oil and gas leases on allotted lands—and the corresponding lack of any role for tribal law or tribal government in that process—undermine[d] any notion that tribal regulation in this area [was] necessary for tribal self-government").

125.    The absence of insurance regulation by the Tribe is significant also because "a tribe's adjudicative jurisdiction [can]not exceed its legislative jurisdiction." *Strate*, 520 U.S. at 453; *see also Plains Commerce Bank*, 554 U.S. at 330 ("reaffirm[ing]" the principle that tribal courts lack jurisdiction to hear claims exceeding the bounds of a tribe's "legislative jurisdiction"). Because the Tribe does not regulate insurance and has not been granted regulatory authority by Congress over any aspect of the insurance industry, the Tribal Court cannot exercise adjudicative jurisdiction over Plaintiffs' insurance activity. *See Jackson*, 764 F.3d at 782 ("[I]f a tribe does not have the authority to regulate an activity, the tribal court similarly lacks jurisdiction to hear a claim based on that activity.").

126.    The Tribal Court of Appeals erred by failing even to consider, let alone decide, whether the exercise of tribal jurisdiction over the Insurers in the Tribal Court Action was "necessary to protect tribal self-government or to control internal relations" or, similarly, whether such adjudicatory authority exceeded the Tribe's legislative authority.

### 4.    The Exercise of Tribal Jurisdiction Over the Insurers Swallows the General Rule Against Tribal Jurisdiction Over Nonmembers

127.    The *Montana* exceptions "cannot be construed in a manner that would swallow the rule" against tribal jurisdiction over nonmembers. *Cooley*, 141 S. Ct. at 1645 (citing *Plains Commerce Bank*, 554 U.S. at 330). The exercise of tribal jurisdiction over the Insurers, however, does just that.

128.    By permitting the exercise of tribal jurisdiction over the Insurers, the Tribal Court of Appeals has construed the first *Montana* exception in a way that allows the Tribe authority over nonmembers based solely on the existence of a contractual relationship with the Tribe relating to Reservation property, without accounting for the additional limiting requirements that the

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
(213) 229-7000

nonmember's relevant conduct occur *on the land* held by the Tribe and that the exercise of tribal jurisdiction be justified by reference to the Tribe's *sovereign interests*. This construction of the first *Montana* exception is untenable.

    a.   It allows the Tribe to exercise jurisdiction over every nonmember it contracts with, regardless of whether the nonmember's relevant conduct actually takes place on the Tribe's land or implicates tribal self-government and internal relations.

    b.   It allows the Tribe to regulate the terms of its "consensual relationships" with nonmembers, even though the first *Montana* exception is confined to regulating nonmember *conduct* on the land that implicates a tribe's sovereign interests rather than the consensual relationships themselves.

    c.   It provides the Tribe with adjudicatory and regulatory authority over every contract the Tribe enters into with nonmembers, as if contracting with the Tribe were equivalent to physically entering and acting on the Tribe's lands.

## C.    The Right to Exclude Does Not Apply

129.    The Ninth Circuit allows tribal jurisdiction over nonmembers based not just on the two narrow *Montana* exceptions, but also the "right to exclude" doctrine. *Water Wheel Camp Rec. Area, Inc. v. LaRance*, 642 F.3d 802, 804–05 (9th Cir. 2011) (per curiam). Under that doctrine, a tribe's "sovereign authority over tribal land" provides it with the power to exclude nonmembers from the land, a power which "necessarily includes the lesser authority to set conditions on their entry through regulations." *Id.* at 811. The Supreme Court has not recognized the right-to-exclude doctrine as a basis for tribal jurisdiction separate and apart from *Montana*. But under current Ninth Circuit law, it applies independently from *Montana*: A tribe's power to exclude applies to nonmembers on "tribal land," whereas a tribe's powers under *Montana* apply to nonmembers on "non-Indian fee land," which is land held in fee simple by a nonmember. *Id.* at 812.

130.    The Tribal Court of Appeals decided that the right-to-exclude doctrine here permits the exercise of tribal jurisdiction over the Insurers, because the insurance contracts at issue "were expressly directed and tied to the Port Gamble S'Klallam Tribe's trust lands and businesses located

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
(213) 229-7000

on the Port Gamble S'Klallam Reservation" and the Tribal Court Action was based on losses that "occurred on those lands."

131.   The Tribal Court of Appeals incorrectly applied the right-to-exclude doctrine, which does not permit the exercise of tribal jurisdiction under these circumstances.  Similar to the first *Montana* exception, for the "right to exclude" to apply, a nonmember must physically enter tribal land, and the nonmember's physical presence on the land must be at issue and implicate that tribe's ability to manage its lands.

    a.   *Water Wheel*, 642 F.3d at 814:  The Ninth Circuit affirmed a tribe's regulatory jurisdiction over a nonmember based on the right-to-exclude doctrine, "where the non-Indian activity in question occurred on tribal land" and "the activity interfered directly with the tribe's inherent powers to exclude and manage its own lands."

    b.   *Knighton v. Cedarville Rancheria of N. Paiute Indians*, 922 F.3d 892, 901 (9th Cir. 2019):  The Ninth Circuit held that a tribe had "authority to regulate [a nonmember employee's] conduct on tribal land pursuant to its sovereign exclusionary powers," given that the nonmember's "alleged conduct violated the [t]ribe's regulations that were in place at the time of her employment," while she was "on tribal land."

    c.   *Grand Canyon Skywalk Dev. v. 'SA' Nyu Wa Inc.*, 715 F.3d 1196, 1204–05 (9th Cir. 2013):  The Ninth Circuit found tribal jurisdiction "not plainly lacking" with regard to a non-tribal corporation that entered into an agreement with a tribal corporation to build and manage a tourist destination on tribal land. Because the "essential basis for the agreement" was "access to" tribal land and the agreement "interfered with the [tribe's] ability to exclude [the non-tribal corporation] from the reservation," the tribe likely had regulatory and adjudicatory authority over the parties, lands, and interests implicated by that agreement.

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
(213) 229-7000

132.    When a nonmember has *not* physically entered tribal land and has *not* engaged in activity on tribal land, the "right to exclude" does not apply.  *See Emp'rs Mut. Cas. Co. v. McPaul*, 804 F. App'x 756, 757 (9th Cir. 2020).   In *McPaul*, the Ninth Circuit held that because a nonmember insurance company's "relevant conduct—negotiating and issuing general liability insurance contracts to non-Navajo entities—occurred entirely outside of tribal land," a tribal court's jurisdiction could not be premised on the tribe's right to exclude.  *Id.*  As the district court in *McPaul* elaborated, the nonmember insurer "never set foot on reservation land, interacted with tribal members, or expressly directed any activity within the reservation's borders."  *Emp'rs Mut. Cas. Co. v. Branch*, 381 F. Supp. 3d 1144, 1149–50 (D. Ariz. 2019), *aff'd sub nom.*, *McPaul*, 804 F. App'x 756.

133.    The Tribe's right to exclude does not apply to the Insurers and therefore does not permit the exercise of tribal jurisdiction over them.

    a.    The Insurers have not entered into, sent employees to, maintained operations within, trespassed, or engaged in any activity on the Tribe's land or within the territorial borders of the Tribe.

    b.    The insurance contracts at issue do not provide the Insurers with access to the Tribe's land, nor do they contain terms that affect or impair the Tribe's ability to exclude individuals from its land.

134.    As part of its analysis of the "right to exclude" doctrine, the Tribal Court of Appeals held that the Tribe "could have excluded [the Insurers] from selling" insurance policies to the Tribe regarding "reservation property and businesses."   But the Tribal Court of Appeals cited no authority to support this proposition, which appears to conflate commercial discretion with sovereign authority.   What the Tribe may or may not be able to do as a private party deciding the terms of a business relationship must not be confused with what it is permitted to do as a tribal sovereign seeking to impose its authority on a nonmember.   *See San Manuel Indian Bingo and Casino v. NLRB*, 475 F.3d 1306, 1312–13 (D.C. Cir. 2007) ("[T]ribal sovereignty is not absolute, permitting a tribe to operate in a commercial capacity without legal constraint."); *see also Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 146 (1982) (cautioning against "confus[ing] the Tribe's

role as commercial partner with its role as sovereign"); *Montana*, 450 U.S. at 565–66 ("Indian tribes have lost any 'right of governing every person within their limits except themselves'" but can "exercise some forms of civil jurisdiction over non-Indians *on* their reservations" (emphasis added)). Indeed, when "a tribal government goes beyond matters of internal self-governance and enters into off-reservation business transaction[s] with non-Indians, its claim of sovereignty is at its weakest." *San Manuel*, 475 F.3d at 1313.

135. Because the Insurers have not entered the Tribe's land, there is nothing for the Tribe to exclude, and thus the "right to exclude" doctrine does not permit the exercise of tribal jurisdiction over the Insurers in the Tribal Court Action.

## FIRST CAUSE OF ACTION
### (Declaratory Relief)

136. Plaintiffs re-allege and incorporate by reference each of the allegations above.

137. An actual and justiciable controversy exists between Plaintiffs and Defendants concerning the ongoing exercise of jurisdiction by the Tribal Court over Plaintiffs and the claims brought against them in the Tribal Court Action. A declaration by this Court as to the Tribal Court's jurisdiction would terminate the controversy giving rise to this cause of action.

138. Plaintiffs are entitled to a judgment from this Court declaring that the Tribal Court lacks jurisdiction over Plaintiffs and the claims brought against them in the Tribal Court Action and that the ongoing exercise of such jurisdiction violates federal law.

## SECOND CAUSE OF ACTION
### (Injunctive Relief)

139. Plaintiffs re-allege and incorporate by reference each of the allegations above.

140. The Tribal Court has exercised and will continue to exercise jurisdiction over Plaintiffs and the claims brought against them in the Tribal Court Action.

141. The ongoing exercise of jurisdiction by the Tribal Court over Plaintiffs and the claims brought against them in the Tribal Court Action is unlawful.

COMPLAINT
No. ___
Page 35

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000

142.     Because of the ongoing and unlawful exercise of jurisdiction by the Tribal Court over Plaintiffs and the claims brought against them in the Tribal Court Action, Plaintiffs face irreparable injury for which no adequate legal remedy exists.

      a.   Plaintiffs have been and imminently will be subject to the orders and judgments of a court that lacks jurisdiction over Plaintiffs and the claims at issue.

      b.   Plaintiffs have been and imminently will be forced to expend unnecessary and unreasonable time, effort, and expense by litigating the Tribal Court Action before a court that lacks jurisdiction over Plaintiffs and the claims at issue.

143.     The irreparable harm to Plaintiffs in the absence of injunctive relief outweighs any hardships to Defendants.

144.     An injunction against further proceedings involving Plaintiffs in the Tribal Court Action will serve the public interest in ensuring the proper allocation of jurisdiction and authority between federal, state, and tribal courts.

145.     Plaintiffs are entitled to an injunction against further proceedings involving Plaintiffs in the Tribal Court Action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

A.     A declaration pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure Rule 57 that the Port Gamble S'Klallam Community Court lacks jurisdiction over the Insurers and the claims brought against the Insurers in *Port Gamble S'Klallam Tribe v. Lexington Insurance Company*, No. POR-C1-2020-0014-G, and that the Port Gamble S'Klallam Community Court's ongoing exercise of jurisdiction over the Insurers and the aforementioned claims violates federal law;

B.     A preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining Defendants, their agents, employees, successors and assigns from engaging in further proceedings involving the Insurers before the Port Gamble S'Klallam Community Court in *Port Gamble S'Klallam Tribe v. Lexington Insurance Company*, No. POR-C1-2020-0014-G;

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
(213) 229-7000

C.      A permanent injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining Defendants, their agents, employees, successors, and assigns from engaging in further proceedings involving the Insurers before the Port Gamble S'Klallam Community Court in *Port Gamble S'Klallam Tribe v. Lexington Insurance Company*, No. POR-C1-2020-0014-G;

D.      An award of costs, fees, and other disbursements allowed by law, including but not limited to attorneys' fees; and

E.      Such other relief as may be just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

Dated:  December 22, 2021          GIBSON, DUNN & CRUTCHER LLP

By:  s/ *Richard J. Doren*
         Richard J. Doren*
By:  s/ *Matthew A. Hoffman*
         Matthew A. Hoffman*
By:  s/ *Bradley J. Hamburger*
         Bradley J. Hamburger*
By:  s/ *Daniel R. Adler*
         Daniel R. Adler*
By:  s/ *Kenneth H. Oshita*
         Kenneth H. Oshita*

*pro hac vice forthcoming*

333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  (213) 229-7000
Email:  rdoren@gibsondunn.com
Email:  mhoffman@gibsondunn.com
Email:  bhamburger@gibsondunn.com
Email:  dadler@gibsondunn.com
Email:  koshita@gibonsdunn.com

JENSEN MORSE BAKER PLLC

By:  s/ *Gabriel Baker*
         Gabriel Baker, WSBA No. 28473
By:  s/ *Benjamin J. Roesch*
         Benjamin J. Roesch, WSBA No. 39960

COMPLAINT
No. __
Page 37

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
(213) 229-7000

1

2

3

1809 Seventh Avenue, Suite 410
Seattle, WA 98101
Telephone:  (206) 682-1550
Email:  gabriel.baker@jmblawyers.com
Email:  benjamin.roesch@jmblawyers.com

4

5

*Attorneys for Plaintiff Lexington Insurance Company*

6

Dated:  December 22, 2021

GORDON THOMAS HONEYWELL LLP

7

8

By:  s/ *Michael E. Ricketts*
Michael E. Ricketts, WSBA No. 9387

9

10

11

520 Pike Street, Suite 2350
Seattle, WA 98101
Telephone:  (206) 676-7500
Fax:  (206) 676-7575
Email:  mricketts@gth-law.com

12

13

*Attorneys for Plaintiff Homeland Insurance Company of New York*

14

Dated:  December 22, 2021

LETHER LAW GROUP

15

16

17

By:  s/ *Thomas Lether*
Thomas Lether, WSBA No. 18089
By:  s/ *Eric J. Neal*
Eric J. Neal, WSBA No. 31863

18

19

20

1848 Westlake Ave N, STE 100
Seattle, WA 98109
Telephone:  (206) 467-5444
Fax:  (206) 467-5544
Email:  tlether@letherlaw.com
Email:  eneal@letherlaw.com

21

22

23

*Attorneys for Plaintiffs Hallmark Specialty Insurance Company, Aspen Specialty Insurance Company, and Aspen Insurance UK Ltd*

24

Dated:  December 22, 2021

FORSBERG & UMLAUF, P.S.

25

26

By:  s/ *Robert W. Novasky*
Robert W. Novasky, WSBA No. 21682

27

28

COMPLAINT
No. ___
Page 38

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
(213) 229-7000

1102 Broadway, Suite 510
Tacoma, WA 98402
Telephone:  (253) 572-4200
Email:  rnovasky@foum.law

*Attorneys for Plaintiffs Certain Underwriters at
Lloyd's, London and London market companies
subscribing to Policy Nos. PJ193647, PJ1900131,
PJ1933021, PD-10367-05, PD-11091-00, and
PJ1900134-A*

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
(213) 229-7000